Amanda Harber, AK #1011119
Attorney for the Plaintiff
49th State Law LLC
PO Box 661
Soldotna, AK 99669
Tel: (907) 420-4290
Fax: (907) 308-6685
Email: amanda@49thstatelaw.com

# UNITED STATES DISTRICT COURT
## DISTRICT OF ALASKA
## ANCHORAGE DIVISION

| | |
|---|---|
| PAUL WELLS, KIMBERLY JUNE WELLS, individually and as a marital community, and JUSTIN LUNN, KIMBERLY LUNN, individually and as a marital community,<br>   *Plaintiffs*,<br><br>vs.<br><br>FEDERAL AVIATION ADMINISTRATION; HOWARD MARTIN, an individual; PATRICK SULLIVAN, an individual; GLENN H. BROWN, an individual, TY BARTAUSKY, an individual, BETH CLAIRBORNE, an individual and DOES 1-5,<br>   *Defendants*. | CASE NO.:<br><br>**PLAINTIFFS' COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL** |

## COMPLAINT

COME NOW, Plaintiffs Paul Wells (Wells), Kimberly June Wells, Justin Lunn (Lunn), and Kimberly Lunn, and allege as follows:

## I. PARTIES

1.1 Plaintiff Paul Wells (Wells) is a resident of the state of Alaska, holding Air Transport Pilot Certificate 3402743. Plaintiff Kimberly June Wells is the spouse of Paul Wells.

1.2 Plaintiff Justin Lunn (Lunn) is a resident of the State of Alaska, holding Air Transport Pilot Certificate 3799150. Plaintiff Kimberly Lunn is the spouse of Justin Lunn.

1.3 Defendant Federal Aviation Administration ("FAA") is an agency of the U.S. Department of Transportation responsible for the regulation of civil aviation within the United States.

1.4 Defendant Glenn H. Brown (Brown) is employed by the FAA Office of the General Counsel.

1.5 Defendant Howard Martin (Martin) is employed by the FAA as Alaska Regional Counsel.

1.6 Defendant Patrick Sullivan is employed by the FAA as a project manager.

1.7 Defendant Beth Clairborne (Clairborne) is employed by the FAA as an inspector.

1.8 Defendant Ty Bartausky (Bartausky) is employed by the FAA as an inspector.

1.9 Defendants DOE 1-5 are as yet unidentified employees of the FAA.

## II. JURISDICTION AND VENUE

2.1 Paragraphs 1.1 through 1.9 as if set forth above are hereby incorporated by this reference as though fully set forth herein.

2.2 Plaintiffs Wells and Lunn are residents of Anchorage, Alaska.

2.3 Defendant Brown is a resident of Anchorage, Alaska.

2.4 Defendant Sullivan was employed in the State of Alaska.

2.5 All remaining Defendants are residents of the State of Alaska.

2.6 The subject matter of this action arises out of an air crash that occurred on October 17, 2019, at Tom Madsen Airport, Unalaska, Alaska (the Crash).

2.8 This Court has subject matter jurisdiction pursuant to U.S.C. 1331.

### III. STATEMENT OF FACTS

**A. The Crash**

3.1 Paragraphs 1.1 through 2.8 as set forth above are hereby incorporated by this reference as though fully set forth herein.

3.2 On October 17, 2019, Wells was employed by Peninsula Aviation (Penair), acting as the Pilot in Command of the Aircraft on the Flight, from Anchorage Alaska to Tom Madsen Airport (the Airport).

3.3 On October 17, 2019, Lunn was employed by Peninsula Aviation (Penair), acting as the First Officer of the Aircraft on the Flight, from Anchorage Alaska to Tom Madsen Airport.

3.4 Approximately ten minutes prior to the Flight approaching the airport, another aircraft landed at the airport, on the same runway at the orientation without incident.

3.5 As the Flight initiated its initial approach to the Airport, the Aircraft became unstable, so the Pilots went around. On the second approach, Wells and Lunn visually checked wind direction by visually observing the adjacent body of water, confirming that there were no signs of swells, and observing the Airport windsock, confirming that there were no wind conditions that would prevent a safe landing.

3.6 On touchdown, the landing gear brakes of the aircraft were applied.

3.7  The aircraft initially experienced normal braking and decelerated for approximately 8 seconds. Then, normal braking was lost and deceleration slowed and the aircraft was not able to maintain deceleration, despite brakes being applied.

3.8  The Anti-Skid braking system was applied, but failed to slow or stop the Aircraft due to having been improperly wired. There was no emergency brake available on the Aircraft.

3.9  The aircraft continued on to a flat grassy area at the end of the runway.

3.10  Unbeknownst to Wells and Lunn, Unalaska had placed a large boulder on this grassy area. This was either known, or should have been known, by Alaska as owner of the Airport.

3.11  In annual inspections of the Airport, the FAA failed to observe, note or demand removal of this boulder.

3.12  At that time, the Aircraft made contact with the boulder, causing it to crash. As a result, a propellor blade broke off and pierced the fuselage of the Aircraft, causing the death of one passenger and injuring a number of others.

**B.  The Investigation**

3.13  On November 11, 2019, Sullivan wrote to both Wells and Lunn, advising that the FAA was investigating the crash and requesting that they provide the FAA with information regarding the Crash.

3.14  On November 13, 2019, Wells responded providing a detailed account of the approach, landing, and crash of the flight. In this letter, Wells advised Sullivan to contact him if he required more information.

3.15 On November 13, 2019, Lunn responded providing a detailed account of the approach, landing, and crash of the flight. In this letter, Lunn advised Sullivan to contact him if he required more information.

3.16 On February 10, 2020 and on February 12, 2020, Kathleen Yodice (Yodice) counsel for Wells and Lunn wrote to Sullivan reiterating the continuing eagerness of Wells and Lunn to cooperate with the FAA investigation of the crash, referencing the detailed accounts referenced in paragraphs 3.13 and 3.14 above. Yodice requested that Sullivan identify any issues of concern and documentation and/or information the FAA required.

3.17 On February 13, 2020, Sullivan wrote to Yodice, failing to respond to her requests, but rather insisting on an interview with Wells and Lunn.

3.18 On March 30, 2020, Wells received a Notice of Proposed Certificate Action signed by Brown on behalf of the FAA.

3.19 On March 30, 2020, Lunn received a Notice of Proposed Certificate Action signed by Brown on behalf of the FAA.

3.20 After considerable delay as a result of the Covid pandemic, on November 17, 2020, pursuant to FAA procedure, an informal conference was conducted via video. Participating were Brown, Sullivan, Bartausky and Clairborne on behalf of the FAA, Wells, Lunn and their attorney, Yodice.

3.22 During that conference, the FAA representatives were seen taking notes but did not ask any questions of or request information or documents from Wells and/or Lunn. This despite the previous requests from Sullivan for an interview of Wells and Lunn.

3.23 On information and belief, at no time did any representative of the FAA interview the pilot, or any other member of the crew, of the flight referred to in paragraph 3.4 above.

3.24 On December 20, 2020, the National Transportation Safety Board, Office of Aviation Safety (NTSB), issued the report of the Systems and Structures Group of the investigation into the cause of the crash. This report identified a mechanical failure, related to the crash. Specifically, wiring done incorrectly and cross-wiring causing the failure of the anti-skid system.

3.25 On February 4, 2021, Yodice wrote to Brown, referencing the NTSB report and the findings of incorrect and faulty wiring, requesting that, in view of this finding of a mechanical failure, that the FAA reconsider the case against Wells and Lunn.

3.26 On March1, 2021, Brown responded to Yodice, acknowledging the findings of the NTSB, but refusing the request for reconsideration 3.27 On September 16, 2021, Wells presented a claim to the FAA pursuant to 28 USC 2675A, identifying all Defendants herein as responsible parties.

3.28 On September 30, 2021, Lunn presented a claim to the FAA pursuant to 28 USC 2675A, identifying all Defendants herein as responsible parties.

3.29 On April 11, 2022, the FAA notified Wells that it was withdrawing the Certificate Action referred to in Paragraph 3.15 above.

3.30 On April 11, 2022, the FAA notified Lunn that it was withdrawing the Certificate Action referred to in Paragraph 3.16 above.

3.31    However, despite the actions referred to in Paragraphs 3.35 and 3.36, as of the date of the filing of this Complaint, the FAA has taken no action on the claims referred to in Paragraphs 3.23 and 3.24 above.

## IV.  FIRST CAUSE OF ACTION NEGLIGENCE ON THE PART OF ALL DEFENDANTS

4.1    Paragraphs 1.1 through 3.27 as set forth above are hereby incorporated by this reference as though fully set forth herein.

4.2    Sullivan initially contacted Wells and Lunn on behalf of the FAA as identified in paragraph 3.12 above.

4.3    Despite having received the detailed responses from Wells and Lunn identified in paragraphs 3.13 and 3.14 above, including their respective offers to provide any additional information requested, Sullivan negligently stated that the pilots had failed to cooperate in the investigation, causing the investigation to be designated an enforcement rather than a compliance action.

4.4    Martin, as Alaska Regional Counsel of the FAA, has responsibility for overseeing the investigation.

4.5    Brown was designated by the FAA to review Sullivan's investigation and make a determination on whether to initiate legal enforcement action against the airman certificates of Wells and Lunn, or not.

4.6    Bartausky and Clairborne are both FAA investigators assigned to the investigation.

4.7     On information and belief, FAA personnel overseeing and/or conducting the investigation and taking legal enforcement action, including but not limited to Martin, Brown, Bartausky and Clairborne negligently failed to interview the pilot of the flight identified in paragraph 3.4 above.

4.8     Despite the FAA having requested on interview of Wells and Lunn, and both having provided written descriptions of the crash and offering to provide any further information requested, Brown, Bartausky and Clairborne negligently failed to ask any questions of, or in any way seek additional information and/or documents from Wells and/or Lunn at the conference identified in paragraph 3.17 above.

4.9     Having received the NTSB report identified in paragraph 3.20 above, identifying a mechanical cause for the crash, the FAA negligently continued and delayed the investigation directed at the conduct of Wells and Lunn until April 11, 2022.

4.10    As a direct result of the actions of Defendants set forth in Paragraphs 4.2 through 4.9 above, Wells and Lunn have suffered, and continue to suffer, severe emotional distress, including, but not limited to Post Traumatic Stress Disorder (PTSD).

## V.  SECOND CAUSE OF ACTION NEGLIGENCE ON THE PART OF THE FAA

5.1     Paragraphs 1.1 through 4.9 as set forth above are hereby incorporated by this reference as though fully set forth herein.

5.2     The negligent failure of the FAA to observe, note or require removal of the boulder as set forth in Paragraph 3.12 above resulted in the forceful crash and diversion of the aircraft.

5.3 As a direct result of the negligence of the FAA, Wells sustained multiple physical injuries.

## VI. THIRD CAUSE OF ACTION-NEGLIGENT INTERFERENCE WITH ECONOMIC ADVANTAGE

6.1 Paragraphs 1.1 through 4.9 as set forth above are hereby incorporated by this reference as though fully set forth herein.

6.2 At the time of the crash, Wells and Lunn were employed by Peninsula Aviation Services as pilots.

6.3 It was the intention of Wells and Lunn to continue employment as pilots after the crash.

6.4 The FAA, Sullivan, Martin and Brown have been, at all times, and still are aware of the economic advantage to Wells and Lunn of continued and future employment as pilots.

6.5 The negligence of the FAA, Sullivan, Martin, and Brown, have caused Wells and Lunn to be unable to secure the economic advantage of income from employment as pilots with any commercial airline or private aircraft operation.

6.6 The emotional distress suffered by Wells and Lunn have placed in jeopardy their respective ability to resume employment as pilots.

## VI. PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs pray for judgement against Defendants as follows:

A. For damages in an amount to be proven at trial based on the negligence of each and all Defendants;

B. For past, current and future lost earnings based on their tortious interference with the economic advantage of Plaintiffs;

C. For attorneys' fees and costs as permitted by law; and

D. Such other and further relief as the Court deems just and proper.

**PLAINTIFFS DEMAND TRIAL BY JURY**

By: _____
Attorneys for Plaintiffs

Amanda Harber
**49th State Law, LLC**
PO Box 661
Soldotna, AK 99669
(907) 420-4290
amanda@49thstatelaw.com

&

Roger Hillman *pro hac vice pending*
**Paramount Law Group**
11335 NE 122nd Way, Suite 105
Kirkland, WA 98034
Telephone: (425) 285-5888
Facsimile: (206) 420-5369
rhillman@paramountlawgroup.com